## Webb's Appeal.

Though a husband cannot give away his wife's *choses in action*, nor pledge them as *collateral security*, so as to bar her right of survivorship, yet in Pennsylvania he may sell and assign them for a valuable consideration; and this is applicable to *choses* presently reducible into possession, reversionary interests or possibilities.

This was an appeal by Mary Webb, from the decree of the Orphans' Court of *York county*, decreeing distribution of the estate of George Beard, jun., deceased, and awarding the share claimed by said Mary Webb, to the executors of William Barber, deceased.

The fund for distribution consisted entirely of the share of George Beard, *junior*, deceased, in the dower fund charged, according to the intestate laws of the Commonwealth, upon the real estate of his father, George Beard, sen., deceased, to bear interest for the widow of the latter during her life, and at her death to be divided amongst the children of the said George Beard, sen.

George Beard, jun., died in 1817, intestate, unmarried, and without issue. His mother, the widow of George Beard, sen., survived till September, 1850. Mary Webb, the appellant, was the sister of George Beard, jun., and the widow of James B. Webb, who died in June, 1838. The question was, whether the instrument executed April 1, 1828, between William Barber and James B. Webb, conveyed to the said Barber the said Mary's share of said dower fund. The auditor awarded to Mary Webb her share, but on exceptions the Court decided otherwise, and awarded her share to the executors of William Barber, deceased.

The proceedings in partition of the estate of George Beard, senior, from which the fund for distribution accrued, were consummated before the death of George Beard, *junior*, which occurred, as before stated, in 1817. Mary, his sister, the appellant, was intermarried with James B. Webb in 1820 or 1821.

The paper executed by James B. Webb was an agreement signed by W. Barber and Webb, dated 1st April, 1828, in which it was recited that Webb was entitled, in right of his wife Mary, to one-eighth part of one-third of the amount of the real estate of her father, which remains a lien upon said real estate, for the benefit of the widow of said George Beard during her life; and also in the same right to one-seventh part of the share of her brother, George Beard, jun., deceased, of the dower fund aforesaid, the whole amounting to $4576.87, payable at the death of the widow. And in consideration of indebtedness by Webb to Barber, and of the endorsement by the latter of Webb's note in the York Bank,

[Webb's Appeal.]

Webb assigned and transferred to Barber all his right and interest in right of his wife, in the said sum of money.

Barber's estate was sufficient to pay its debts, including the endorsement. The share of Mary Webb was not sufficient to pay the amount due by Webb's estate to Barber's estate.

Exception was filed to the decree awarding the money to Barber's executors.

*Chapin*, for appellant.—It was contended that the agreement or transfer became void, as against the surviving wife, on the death of Webb, her husband, during the life of the widow, for whose benefit the fund was, during that period, suspended; that a husband cannot, by any act of his alone, bar the wife's survivorship in her reversionary choses in action, expectant on the death of a tenant for life: Hornsby *v.* Lee, 2 *Mad.* 16; 1 *Russ.* 1, Purden *v.* Jackson; 3 *Russ.* 65, Honner *v.* Morton; 3 *Id.* 90; *Glancy* 137–150.

In *Glancy* 121, the treatment is of choses in action *presently reducible* into possession, which was not the case in question. The case of Bates *v.* Dandy, 2 *Atkins* 207, and note to 3 *Russ.* 73, was determined on the ground that *the husband* might have recovered the fund: see *Glancy* 121, and opinion of Lord ELDON, in 3 *Russ.* 73. In the case of Hartman *v.* Doudel, 1 *Rawle* 279, the question as to the power of the husband to assign the *reversionary* interest of the wife was not raised. In this case the husband had not the power to reduce the fund into possession.

*Mayer*, with whom was *Evans*, for appellees.—In the English Chancery it has been settled that nothing but the actual receipt of the money during the coverture will bar the surviving wife: *Adams' Equity* 142; 1 *Coll.* 553; 11 *Simons* 388; 13 *Id.* 309; 2 *Coll.* 254. But *in Pennsylvania* a different rule exists: Siter's Case, 4 *Rawle* 468; 1 *Bin.* 358, Yohe *v.* Barnet; 2 *Ser. & R.* 491, Lodge *v.* Hamilton; 1 *Rawle* 279, Hartman *v.* Doudel; 2 *Wash. C. C. Rep.* 408; 1 *Penn. Rep.* 373, Richwine *v.* Heim; 4 *Rawle* 177; 5 *Whar.* 142; 6 *W. & Ser.* 290; 7 *W. & Ser.* 168, Shuman *v.* Reigart; 2 *Barr* 71, Woelper's Appeal; 1 *Harris* 561, Eshelman *v.* Shuman's Adm.; 4 *Harris* 365, McConnell *v.* Wenrich; 4 *Id.* 343; 2 *Russ. & Mylne* 13; 2 *Hen. & Mun.* 381; 4 *Pickering* 374.

The opinion of the Court was delivered, June 9, 1853, by

WOODWARD, J.—The Act of Assembly of 11th April, 1848, to secure to married women their separate estates, has no application

[Webb's Appeal.]

to this case, for the assignment under which the appellees claim was made twenty years before the Act was passed.

That the consideration of the assignment was valuable, is beyond question, and the legal consequences that flow from it are equally indisputable.

Though a husband cannot give away a wife's choses in action, nor pledge them as collateral security, so as to bar her rights of survivorship, yet the law is well settled in Pennsylvania that he may sell and assign them for a consideration.

Marriage is held to be not only a gift of choses, reduced to possession during coverture, but a transfer of the wife's dominion, and power of disposition, so that whatever interest she might have assigned, if sole, the husband may assign for a valuable consideration: Siter's Case, 4 *Rawle* 468; Timbers v. Katz, 6 *W. & Ser.* 298; Coale v. Smith, 4 *Barr* 388; Shay v. Sessman, 10 *Barr* 432; Krupp v. Scholl, 10 *Barr* 193; Clevenstine's Appeal, 3 *Harris* 495; McConnell v. Wenrich, 4 *Harris* 365.

I thought on the argument that a distinction could be taken in favor of a fund, expectant on a life estate which outlived the husband; for it seemed to me unreasonable that a husband's assignment, which could not put the assignee into possession till after the discoverture of the wife, should be held to bar her; but an attentive consideration of the authorities, and especially of Woelper's Appeal, 2 *Barr* 71, has dissipated this expectation. In that case, as in this, the wife's chose was reversionary and dependent on a life estate, and the husband was trustee of the tenant for life; yet it was held that his conversion of the fund, in fraud of the *cestui que trust*, was a reduction of it to possession that gave him the absolute title as against his wife. The principle of decision that runs through all the cases, is that a transfer for value is a reduction to possession, whether as to choses presently reducible, reversionary interests, or bare possibilities. However averse to this conclusion some of us might be if the question were an open one, we remember that our office is *jus dicere*, and not *jus dare;* and we bow to authorities which we are bound to respect.

The decree is affirmed.